UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                              :
NEIL BADER,                                    :
                                              :          09 Civ. 9410 (PAE)
                          Plaintiff,         :
                                              :          OPINION & ORDER
                      -v-                               :
                                              :
WELLS FARGO HOME MORTGAGE, INC.,      :
                                              :
                          Defendant.    :
                                              :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Neil Bader brings this claim against his former employer, defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), alleging that Wells Fargo wrongfully withheld various forms of bonus compensation in breach of Bader's employment agreement. Pursuant to an Opinion and Order issued on March 29, 2011 by the Hon. Richard J. Holwell, to whom this case was then assigned, Bader's only remaining claim is for breach of contract: That claim relates to certain bonuses to which Bader was entitled, based on loans funded prior to his termination on July 23, 2009, but which he alleges were not paid. Wells Fargo now moves for summary judgment on that claim. For the reasons that follow, Wells Fargo's motion is granted.

**I.     Background**

       The Court adopts the facts as set out in Judge Holwell's March 29, 2011 Opinion and Order ("March 29, 2011 Opinion"), granting in part and denying in part Wells Fargo's motion for judgment on the pleadings. *See Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 401–03 (S.D.N.Y. 2011). The Court assumes familiarity with those facts.

In summary, Bader joined Wells Fargo as a branch manager in 2003; by 2004 he had been promoted to an area manager. Bader was, by all accounts, a highly successful area manager, having qualified for Wells Fargo's Leader's Club and having been designated as the top-ranked area manager in the country. As an area manager, between 2004 and 2008, Bader was eligible to receive various forms of incentive compensation, including, as relevant here, compensation based on the monthly volume of loans funded by employees reporting directly and indirectly to Bader ("Volume Overrides"). Bader was also entitled to Volume Overrides in 2009 pursuant to the Wells Fargo Home Mortgage 2009 Incentive Compensation Plan for Area Home Manager (the "2009 Area Manager Plan"). *See* Affidavit of Mark Faktor Ex. 1 (Dkt. 37) ("Faktor Aff."). On June 21, 2009, Wells Fargo amended the 2009 Area Manager Plan, which, *inter alia*, reduced compensation levels for Volume Overrides. On July 24, 2009, Wells Fargo terminated Bader's employment.

## II.    Procedural History

On October 21, 2009, Bader brought suit in New York Supreme Court, New York County, asserting claims for breach of contract, breach of implied contract, quantum meruit, promissory estoppel, and violation of New York State Labor Law § 193. *See* Compl. (Dkt. 1). In his Complaint, Bader alleged that he was entitled to be paid three distinct bonuses, one of which was the Volume Overrides bonus. On November 12, 2009, Wells Fargo filed a notice of removal to this Court. On November 30, 2009, Wells Fargo filed its answer to the complaint.

On June 30, 2010, Wells Fargo moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). On March 29, 2011, Judge Holwell granted Wells Fargo's motion as to all claims, with the exception of Bader's breach of contract claim relating to Volume Overrides on loans funded prior to July 23, 2009, the date of Bader's termination.

On June 30, 2011, Wells Fargo served on Bader a request for the production of documents and a first set of interrogatories. *See* Def.'s Mot. at 4 (Dkt. 35). Bader responded and produced responsive documents. On July 5, 2011, Bader served on Wells Fargo a request for the production of documents and a first set of interrogatories. *Id.* Wells Fargo, in turn, responded and produced responsive documents. On August 29, 2011, Wells Fargo deposed Bader.

On August 31, 2011, the discovery period ended. During the discovery period, Bader did not serve any notices of deposition, nor did he depose any of Wells Fargo's witnesses. *See* Defs.' Mot. at 4. On November 21, 2011, a pre-motion conference was held. On January 9, 2012, Wells Fargo moved for summary judgment on Bader's remaining claim.

## III.   Discussion

### A.   Summary Judgment Motion Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). The movant may discharge its burden by demonstrating that there is insufficient evidence to support the opposing party's claim, for which it bears the burden of proof at trial. *See Celotex*, 477 U.S. at 322–23.

Once the moving party has adduced facts demonstrating that the opposing party's claims cannot be sustained, in order to survive the summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not

rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted); *see also FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) ("[T]he non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (citation and internal quotation marks omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Breach of Contract Claim

Following the March 29, 2011 Opinion, the only remaining claim in the case is Bader's breach of contract claim asserting an entitlement to unpaid Volume Override bonuses based on loans that funded prior to Bader's termination on July 23, 2009.

To state a breach of contract claim under New York law, a plaintiff must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Bader has not presented sufficient evidence to support the breach of contract claim he brings here. Specifically, Bader has failed to adduce any evidence tending to show that Wells Fargo failed to perform under the 2009 Area Manager Plan. Bader asserts that in June 2009, he generated $328,188,000 of volume, entitling him to a $65,637.60 Volume Override bonus, and that in July 2009, he generated $320,370,195.80 of volume, entitling him to a $64,074 Volume Override bonus. *See* Pl.'s Statement of Material Facts ¶ 17 (Dkt. 40). Bader claims that he was

instead paid a $32,818.80 bonus for June 2009 and a $32,037 bonus for July 2009, and that he is due the difference between the amount paid and the amount owed for each month. *Id.* However, despite these conclusory assertions, Bader fails to point to any evidence in support of his claim that he is entitled to these additional sums.

Wells Fargo, on the other hand, has produced convincing proof that Bader was paid in full for all bonuses to which he was entitled. First, Wells Fargo business records establish that, in 2009, Bader was eligible to receive $260,305.51 in Volume Override bonuses for loans funded prior to his termination, and that Wells Fargo paid Bader precisely $260,305.51 in Volume Override bonuses for that year. *See* Faktor Aff. ¶ 7–22, Ex. 2. As to the June and July entitlements specifically, Wells Fargo business records indicate that Bader generated $320,370,195.80 of volume in June 2009, entitling him to a $39,706.93 Volume Override bonus for that month (*see* Faktor Aff. Ex. 8), and $240,435,562.18 of volume in July 2009, entitling him to a $23,591.49 Volume Override bonus for that month (*see* Faktor Aff. Ex. 9). Bader's paystubs, in turn, demonstrate that he was paid $39,706.93 in the pay period following June 2009 (the pay period ending July 18, 2009), and $23,591.49 in the pay period following July 2009 (the pay period ending August 15, 2009), precisely the amounts of Volume Override bonuses to which he was entitled for those two months, as established by Wells Fargo's business records. *See* Faktor Aff. Ex. 9 at 15, 17.

Additionally, in his testimony, Bader failed to identify any specific loan that funded prior to his July 23, 2009 termination as to which he was, allegedly, not paid his required bonus. *See* Def.'s Mot. at 7. Finally, and most revealingly, Bader admits that prior to his departure from Wells Fargo, he was paid $260,305.51 for loans funded in 2009. *See* Pl.'s Statement of Material Facts ¶ 18. This amount, which Bader himself *admits* having received from Wells Fargo for

5

loans funded in 2009, is the exact amount of Volume Override bonuses that the documentary evidence demonstrates Bader was entitled to for that period. Accordingly, in the absence of any evidence that Bader was entitled to additional Volume Override bonuses under the 2009 Area Manager Plan, the Court concludes from all available evidence that Bader was entitled to—and received—a $39,706.93 Volume Override bonus for June 2009, a $23,591.49 Volume Override bonus for July 2009, and $260,305.51 in Volume Override bonuses for all loans funded in 2009 before his departure.

In sum, Bader does little more than make conclusory allegations in support of his claim that he is owed additional Volume Override bonuses. The documentary and testimonial evidence emphatically supports Wells Fargo's assertion that it did, in fact, pay Bader all Volume Override bonuses to which he was entitled under the 2009 Area Manager Plan. Because Bader fails to establish an essential element of his breach of contract claim under New York law—namely, that defendant in fact failed to perform under a binding contract—Bader's remaining claim cannot be sustained.

## CONCLUSION

For the reasons discussed above, Wells Fargo's motion for summary judgment on Bader's remaining breach of contract claim is hereby GRANTED. The Clerk of Court is directed to close docket item 27 and terminate the case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: April 25, 2012
      New York, New York